IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FFHOENIX CUIVRE, L.L.C.,

    Plaintiff,

vs.                                                 Civ. No. 01-1190 JP/KBM (ACE)

LESMO MACHINERY AMERICA, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On January 24, 2002, the Defendant filed Defendant's Motion to Compel Compliance with Parties' Extraction Clause and Prerequisites to Binding Arbitration, Including Related Escrow, and to Dismiss Arbitrable Claims (Doc. No. 8). Having reviewed the briefs and relevant law, I find that the Defendant's motion to compel arbitration should be denied.

A. Background

The Plaintiff agreed to purchase from the Defendant certain wire-making equipment for a total purchase price of $490,000. The purchase agreement required the Plaintiff to pay 10% of the purchase price upon the issuance of the Purchase Order for the equipment. The remainder of the purchase price would be covered by a Letter of Credit. Seventy percent of the purchase price would be drawn on the Letter of Credit upon successful commissioning of the equipment. The remaining 20% of the purchase price would be drawn on the Letter of Credit upon completion of the Performance Guarantee as stipulated in the Purchase Order.

The Purchase Order states that if the Defendant is unsuccessful in meeting the Performance Guarantee and the Letter of Credit has expired, the Plaintiff will pay 20% of the purchase price into an escrow account. The escrow account monies would then be made

available to the Defendant when the Performance Guarantee is met or remedial action is completed as contemplated in the extraction clause. The extraction clause states the following:

> In the event that the machines do not meet the guaranteed performance, as listed in the attached table, Lesmo will be granted a 90 day period for remedial action. Any shortfall in basic production rate (ft/min) may be compensated by the supply of additional equipment free of charge to Ffhoenix Cuivre LLC.
>
> Nonconformance issues not reconciled by Lesmo to the satisfaction of Ffhoenix Cuivre LLC within the stipulated time period will be resolved through a professional New Mexico arbitrator. Both parties agree to abide by the arbitration ruling.

Exhibit 1-C (attached to Defendant's memorandum brief in support of its motion to compel).

The Plaintiff paid the Defendant the initial 10% payment of $49,000 on May 29, 2001. The equipment was delivered to the Plaintiff on August 28, 2001 and September 21, 2001. The Plaintiff, however, refused to sign the commissioning statement because it believed that the equipment did not meet certain technical specifications regarding maximum rotating speeds. The Defendant, therefore, could not draw 70% of the purchase price under the Letter of Credit. The Plaintiff, however, paid the Defendant $106,000 on October 9, 2001. The Letter of Credit expired on November 30, 2001. To date, the Plaintiff has paid the Defendant a total of 31.6% of the total purchase price.

On October 15, 2001, the Plaintiff filed this lawsuit. The Plaintiff asserts that the equipment was not timely delivered and does not meet certain technical specifications or operational capabilities. The Defendant responded to the lawsuit in part by asserting that a portion of the Plaintiff's claims are subject to arbitration under the extraction clause.

B. Discussion

The Defendant specifically argues in its motion to compel arbitration that the Plaintiff's claims regarding the performance of the equipment are subject to arbitration under the extraction clause. The Defendant, therefore, asks the Court to dismiss those claims for lack of jurisdiction. The Defendant also asks the Court to order the Plaintiff to pay $98,000 (20% of the purchase price) into an escrow account as provided by the extraction clause. Moreover, the Defendant asks the Court to order the Plaintiff to pay the remaining unpaid balance of $237,000 into an escrow account or into the court registry.

The Plaintiff does not dispute that the contract between the Plaintiff and Defendant requires arbitration of disputes concerning the Performance Guarantee. The Plaintiff, however, argues that its claims do not involve a dispute as to the Performance Guarantee but instead involve a dispute regarding the commissioning of the equipment. The Plaintiff contends that the extraction clause requirement of arbitration is not applicable to commissioning disputes. Even so, the Plaintiff is willing to reinstate its Letter of Credit and deposit it with an arbitrator or into the court registry.

The Federal Arbitration Act (FAA) ensures that written arbitration agreements in transactions involving commerce are "valid, irrevocable, and enforceable...." 9 U.S.C. §2. The FAA permits a court to compel arbitration when one party has failed to comply with an arbitration agreement. *Id.* at §4. Federal policy favors arbitration agreements and requires that any doubts about the scope of arbitrable issues be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This policy also "requires a liberal reading of arbitration agreements...." *Id.* at 23 n. 27.

The resolution of the Defendant's motion to compel arbitration depends upon how the extraction clause is interpreted. The Defendant argues that the extraction clause applies to the Plaintiff's dispute regarding the maximum rotating speeds even though those speeds are not specified in the Performance Guarantee. The Defendant contends that the extraction clause's references to "[a]ny shortfall in basic production rate (ft/min)" and "[n]onconformance issues not reconciled by Lesmo to the satisfaction Ffhoenix Cuivre LLC" indicate that the extraction clause applies to disputes about technical specifications as well as the Performance Guarantee.

Those two phrases must be read in the context of the entire extraction clause. The reference to "[a]ny shortfall in basic production rate (ft/min)" follows the sentence: "In the event that the machines do not meet the guaranteed performance, as listed in the attached table, Lesmo will be granted a 90 day period for remedial action." The placement of the phrase "[a]ny shortfall in basic production rate (ft/min)" immediately following that sentence leads the reader to assume that the basic production rate is listed in the same table which specifies the guaranteed performances, i.e., the Performance Guarantee. The basic production rates are indeed listed in the Performance Guarantee table. However, unlike the basic production rates, the maximum rotating speeds are listed separately from the Performance Guarantee under the heading of "Technical Characteristics." Footnotes to the maximum rotating speed definitions state that those speeds are not indicative of actual production speeds but are merely mechanical speeds. Furthermore, the maximum rotating speeds are measured in TPM's (turns per minute) not ft./min. (feet per minute) as reflected in the phrase "[a]ny shortfall in basic production rate (ft/min)." The maximum rotating speeds clearly are not the same as the basic production rates. Consequently, the extraction clause's reference to "[a]ny shortfall in basic production rate (ft/min)" is not meant to

4

include disputes about maximum rotating speeds.

The phrase "[n]onconformance issues not reconciled by Lesmo to the satisfaction Ffhoenix Cuivre LLC" is followed by the phrase "within the stipulated time period will be resolved through a professional New Mexico arbitrator." The first sentence of the extraction clause states that the Defendant has a 90 day period for remedial action if the equipment does not meet the guaranteed performance or Performance Guarantee. The reference to "[n]onconformance issues not reconciled by Lesmo to the satisfaction Ffhoenix Cuivre LLC" is tied to the 90 day period for remedial action to meet the Performance Guarantee. Hence, the reference to "[n]onconformance issues not reconciled by Lesmo to the satisfaction Ffhoenix Cuivre LLC" is to nonconformance of the Performance Guarantee, not to technical characteristics like maximum rotating speeds.

Liberally reading the extraction clause in its entirely, I find that the extraction clause was meant to apply to only disputes regarding the Performance Guarantee. Plaintiff's dispute as to the technical specifications of the equipment does not fall within the Performance Guarantee. That dispute, therefore, is not subject to the extraction clause and its arbitration requirement.

IT IS ORDERED that Defendant's Motion to Compel Compliance with Parties' Extraction Clause and Prerequisites to Binding Arbitration, Including Related Escrow, and to Dismiss Arbitrable Claims (Doc. No. 8) is denied.

_____
CHIEF UNITED STATES DISTRICT JUDGE